IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BOBBY R. BURNEY,

      Plaintiff,

vs.                                                                  No. 04-4009-SAC

THE COUNTY COMMISSIONERS
OF THE COUNTY OF SHAWNEE,
KANSAS,

      Defendant.

MEMORANDUM AND ORDER

This employment discrimination case comes before the court on defendant's motion for summary judgment.  Plaintiff, a former Deputy Director at the Shawnee County Department of Corrections (DOC), brings claims of age and race discrimination pursuant to the Age Discrimination in Employment Act (ADEA) and Title VII, respectively, as well as the Kansas Act Against Discrimination (KAAD).  Plaintiff also asserts a claim for retaliatory termination.

**A.  Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Hicks v. Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991).  If the moving party meets its initial burden, the burden shifts to the non-moving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *Matsushita,* 475 U.S. at 586-87; *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

Summary judgment may be granted if the non-moving party's evidence

is not significantly probative.  *Anderson*, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

In employment discrimination cases, summary judgments are used sparingly, in part because such claims often turn on the employer's intent.  *Kidwell v. Bd. of County Comm'rs of Shawnee County*, 40 F. Supp. 2d 1201, 1210 (D. Kan. 1998) (citing *Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir. 1995)).  Nevertheless, summary judgment is not "per se improper" in all such cases and may be useful in dismissing cases without merit.  *Id.* (citing *Washington v. Lake County, Ill.,* 969 F.2d 250, 253 (7th Cir. 1993)).

**B.  Statement of Uncontroverted facts**

The posture of this case is unusual because plaintiff failed to contest any of the material facts stated by defendant in its memorandum in support of its motion for summary judgment.  Plaintiff asserted additional statements of fact, but

these are largely immaterial, irrelevant to the issues, or unsupported by the record. The uncontested facts relevant to the issues in the case follow.

Plaintiff, an African American male, was one of several applicants who sought a position as Deputy Director within the Shawnee County Department of Corrections (DOC). Plaintiff scored fourth among the applicants during an initial interview for the position before a board comprised of three members of the community from outside of the DOC. Elizabeth Gillespie, Director of the DOC, selected the four highest scoring applicants for a personal interview. On or about October 13, 2000, Ms. Gillespie hired plaintiff to serve as the Deputy Director for the Shawnee County Adult Detention Center (ADC). The three other persons interviewed for the job were white males, and two of the three were younger than plaintiff.

Ms. Gillespie's first concern regarding plaintiff's performance took place in the fall of 2000. This involved plaintiff's relationship with another Deputy Director. Ms. Gillespie spoke with plaintiff regarding her concerns over a personality conflict between the two, which she believed had largely been created by plaintiff.

By early 2001, Ms. Gillespie had received several of plaintiff's written products and was disappointed with his work. Nevertheless, on plaintiff's first

4

annual employment evaluation as Deputy Director, issued on or about October 11, 2001, she gave plaintiff an overall evaluation rating of "very good."  Ms. Gillespie noted thereon specific areas in which plaintiff could improve, including the need to complete more written products and to personally facilitate teams of the staff.

Plaintiff received his second performance review on or about June 6, 2002.  This early evaluation took place because Ms. Gillespie was not seeing improvement in plaintiff's performance in the areas discussed during his first annual employment evaluation, and she was reluctant to wait a full year for improvements to begin.  Over the course of five pages, Ms Gillespie specifically noted several areas in which plaintiff could improve and, in some cases, described the means by which plaintiff could implement the suggested reform.

In addition to the performance review, Ms. Gillespie created specific written "performance expectations" for plaintiff.  Further, because of plaintiff's complaint that he was unable to complete some tasks because of the large amount of work assigned to him, Ms. Gillespie temporarily reassigned plaintiff to the position of Deputy Director of Special Projects for the ADC.

Plaintiff received his second annual employment evaluation as Deputy Director on or about October 8, 2002.  Ms. Gillespie noted that a large percentage

of plaintiff's performance was not satisfactory, yet rated plaintiff's overall performance as "satisfactory" due to her sympathy for plaintiff, who had recently suffered the traumatic loss of his father.  Ms. Gillespie also scheduled a special performance review for February of 2003.

At that special performance review on February 3, 2003, Ms. Gillespie informed plaintiff that his work performance from October 2002 through January 2003 had been unsatisfactory.  This special performance review contained a detailed account of plaintiff's work performance as Deputy Director.  Ms. Gillespie specifically noted that the Inmate Handbook project, which she had assigned to plaintiff in April 2001, was still incomplete, despite numerous missed deadlines and extended opportunities in which to complete the work.  Because of plaintiff's unsatisfactory job performance, Ms. Gillespie reassigned plaintiff to serve as the Deputy Director of Support Services for the DOC, told plaintiff that a special evaluation would take place in 90 days and warned plaintiff of potential dismissal if his work product did not improve.

On February 10, 2003, plaintiff filed a grievance with the Shawnee County, Kansas Human Resources Director about his February 3rd performance review.  That grievance did not address any issue of age discrimination, race discrimination, or any other form of discrimination.  Instead, the sole stated

complaint was:  "I believe the evaluation to be unfair and the expectations identified

to be unrealistic and unreasonable."  Dk. 21, Att. 4, last page.  A committee was

formed which considered and ultimately denied plaintiff's grievance, finding the

special performance evaluation dated February 3, 2003 to be justified.

   Plaintiff received a letter from Ms. Gillespie on June 5, 2003, which

gave him the option to accept a demotion, resign, or retire; otherwise plaintiff's

employment would be terminated.  The letter informed plaintiff that his work

performance had not met Ms. Gillespie's expectations as specifically defined

during the February 2003 evaluation.  Although plaintiff had by that time presented

the Inmate Handbook to Ms. Gillespie, the product contained several errors and

did not comply with several of Ms. Gillespie's specific instructions.

   Plaintiff received an additional letter from Ms. Gillespie on June 16,

2003, which contained plaintiff's performance review for the period between

February 3, 2003 and May 30, 2003, and proposed termination of plaintiff's

employment.  It rated plaintiff's overall performance for that evaluation period as

"unsatisfactory."  The letter also scheduled a due process hearing for plaintiff

concerning the proposed dismissal of his employment on June 24, 2003.  During

that hearing, plaintiff refused to accept any of the options presented to him in Ms.

Gillespie's letter, and instead contended that he would improve his performance if

7

allowed to remain employed.  During that hearing, plaintiff never raised any issue

regarding his race, his age, or any general issue of discrimination or retaliation.

Plaintiff's employment was terminated by Ms. Gillespie on June 25,

2003, or on June 27, 2003.[1]  At that time, plaintiff was fifty years of age and Ms.

Gillespie was fifty-two.  On June 26, 2003, plaintiff filed a complaint with the

EEOC.

During her tenure as Director of the Shawnee County DOC, Ms.

Gillespie proposed the dismissal of three different members of her management

team, including plaintiff.  All three were offered the same option of accepting

retirement and a lump sum payment of thirty-five percent (35%) of their

accumulated sick leave in lieu of termination.  Plaintiff was the only one of the three

given the option to accept a demotion in lieu of termination.  Following the

termination of plaintiff's employment, Ms. Gillespie hired Richard Kline, a white

male who was older than plaintiff, to replace plaintiff as Deputy Director at the

DOC.

---

[1]Conflicting stipulations on the termination date are included in the pretrial
order.  *See* Dk.17, p. 3, § 4.a.10, stating: "Plaintiff's employment was terminated
by Ms. Gillespie by letter dated June 25, 2003";  *but see*, Dk. 17, p. 4, § 4.a.12,
stipulating : "Plaintiff was an employee of Shawnee County, Kansas from 1975 to
June 27, 2003, at which time plaintiff's employment was terminated."  *See also* Dk.
21, p. 12, ¶18.

## C. Analysis

### Age Discrimination

The court first addresses plaintiff's contention that his termination was based upon his age. Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

Plaintiff has offered no direct evidence of age discrimination, thus the court evaluates his claim under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). That framework, as applied to this case, requires plaintiff to establish a prima facie case of age discrimination by showing that plaintiff was:  (1) within the protected age group; (2) doing satisfactory work; (3) discharged by the employer; and (4) replaced by a younger person.   *Rivera v. City and County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination decision.  *Id.* Once the employer has done so, the plaintiff must present evidence either that the employer's stated reason is a pretext or that the termination decision was motivated by age discrimination.  *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir.

2002).

       Plaintiff fails to show the second and fourth elements of a prima facie case.  The uncontested facts clearly demonstrate that plaintiff was not doing satisfactory work at the time of his termination, or for a substantial period of time prior to the termination of his employment.  A federal court may not "act as a super personnel department that second guesses employers' business judgments." *Jaramillo v. Colorado Judicial Dept.*,  427 F.3d 1303, 1308 -1309 (10th Cir. 2005) (quoting *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)).

       Secondly, plaintiff does not dispute that he was replaced by Richard Kline, a man who is older than plaintiff.  Nor does the record support any inference that Kline was hired for any reason other than a legitimate one.  No allegation is made, for example, that Kline was hired to serve as only a temporary replacement because defendant intended for his hiring to provide a defense against an age discrimination claim by plaintiff.  *Compare Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 561 (10th Cir. 1996).

       Additionally, plaintiff offers no reason why Ms. Gillespie would have fired him based, in part, upon his age, when she was the person responsible for having hired him when he was not significantly younger.  When the same person

hires and fires an employee within a relatively short period of time, it raises an inference that discrimination is not a motivating factor. *See Herr v. Airborne Freight Corp.*, 130 F.3d 359, 363 (8th Cir. 1997) (unlikely that same supervisor would hire member of protected class only to discharge that employee within relatively short time). This common actor inference arises in age discrimination cases because it is highly doubtful that person who hires an employee in the protected age group would fire the same employee as result of a sudden "aversion to older people". *Lowe v. J.B. Hunt Trans., Ins*., 963 F.2d 173, 175 (8th Cir. 1992).

Because over two and one half years passed between plaintiff's hiring and his firing, the common actor inference against discrimination may not be as strong in the present case as it is in some. Nonetheless, the fact that the same person was responsible for both decisions, coupled with the fact that the decision - maker was substantially the same age as plaintiff, underscores the complete absence of any inference that age was a factor in the decision to terminate plaintiff's employment.[2] Because plaintiff has failed to make a prima facie case of age discrimination, the court shall grant defendant's motion for summary judgment on

---

[2]In support of his age discrimination claim, defendant's sole contention is to state: "Defendants' arguments fail for reasons similar to their arguments relative to racial discrimination." Dk. 24-1, p. 31.

this claim.

**Race Discrimination**

The court next addresses plaintiff's claim that his termination was racially motivated.   Plaintiff presents no direct evidence of race discrimination, thus the *McDonnell Douglas* analysis once again provides the analysis used by this court.

The initial burden of establishing a prima facie case by a preponderance of the evidence rests with the plaintiff.  *Perry v. Woodward*, 119 F.2d 1126, 1135 (10th Cir. 1999).  A plaintiff may establish a prima facie case of racially discriminatory termination by showing that:  "(1) [he] belongs to a protected class; (2) [he] was qualified for [his] job; (3) despite [his] qualifications, [he] was discharged; and (4) the job was not eliminated after [his] discharge.  *Id; Kendrick v. Penske Transportation Servs., Inc*., 220 F.3d 1220, 1229 (10th Cir. 2000).

If the plaintiff successfully proves the prima facie case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff."  *Perry,* 119 F.2d at 1135 (citing *McDonnell Douglas*, 411 U.S. at 802).  Upon the articulation by the

defendant of a valid reason for dismissing the plaintiff, the plaintiff can escape

summary judgment only by showing a "genuine dispute of material fact exists as to

whether the defendant's articled reason was pretextual." *Id.* (citing *Randle v. City

of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

> For purposes of this analysis, the court will assume, without deciding,
that plaintiff was minimally qualified for his position, and is able to establish a prima
facie case of race discrimination.  The burden thus shifts to the defendant to
articulate a legitimate, nondiscriminatory reason for plaintiff's termination.  *Id.*  That
burden is not onerous.  *See Anaeme v. Diagnostek, Inc*., 164 F.3d 1275, 1279
(10th Cir. 1999) (recognizing employer's burden is "exceedingly light").

> Defendant has met this burden by stating that the reason for
defendant's termination was unsatisfactory job performance.  That reason is
supported by abundant documentation from Ms. Gillespie to plaintiff that directly
addresses the inherent problems in plaintiff's work performance, the steps required
to improve plaintiff's work performance, and the consequences of plaintiff's failure
to improve his performance over a lengthy period of time.  Unsatisfactory job
performance is a legitimate, nondiscriminatory reason for discharge.  *See Duart v.

FMC Wyoming Corp.,* 72 F.3d 117, 120 (10th Cir. 1995).

13

Therefore, the burden shifts back to plaintiff to show a genuine

dispute of material fact as to whether defendant's assertion of unsatisfactory job

performance is pretextual.  Pretext may be shown "by such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable factfinder could

rationally find them unworthy of credence and hence infer that the employer did not

act for the asserted non-discriminatory reasons." *Danville v. Reg'l Lab Corp*., 292

F.3d 1246, 1250 (10th Cir. 2002).

Pretext may be shown in a variety of ways.

> Typically, a plaintiff attempts to demonstrate pretext in one or more of three
> ways:  "(1) with evidence that the defendant's stated reason for the adverse
> employment action was false, (2) with evidence that the defendant acted
> contrary to a written company policy prescribing the action to be taken by
> the defendant under the circumstances, or (3) with evidence that the
> defendant acted contrary to an unwritten policy or contrary to company
> practice when making the adverse employment decision affecting the
> plaintiff." *Kendrick v. Penske Transp. Servs*., 220 F.3d 1220, 1230 (10th Cir.
> 2000) (internal citations omitted). When attempting to make the third type of
> showing--that an employer acted contrary to an unwritten policy or company
> practice--the plaintiff usually provides "evidence that he was treated
> differently from other similarly-situated employees who violated work rules
> of comparable seriousness." *Id*.

*Doke v. PPG Industries, Inc*., 118 Fed. Appx. 366, 368 -369 (10th Cir. 2004).

The court is hard pressed to understand what, if anything, plaintiff

believes evidences pretext.  Plaintiff contends that Ms. Gillespie assigned him long overdue and unrealistic tasks, such as completing the Inmate Handbook, subjected him to "unheard of "evaluation frequency," and made plaintiff responsible for his own word processing with only minimal help.  Nonetheless, plaintiff fails to show that defendant's stated reason of unsatisfactory performance was false, and does not assert that defendant acted contrary to a written company policy. Nor has plaintiff presented evidence that defendant has tolerated similar errors by similarly-situated employees or otherwise acted contrary to its unwritten policy or established practice.  The typical means by which to show pretext have thus not been used.

In lieu of specific allegations of pretext, plaintiff offers only conclusory statements regarding perceived discrimination.   However, "[m]ere conjecture that [defendants'] explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Morgan v. Hilti*, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (citing *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)).  Because defendant has articulated a legitimate, nondiscriminatory reason for terminating plaintiff, and there is no reasonable inference raised by the evidence showing defendant's reason to be pretextual, the court grants defendant's motion for summary judgment on his race discrimination

15

claim.

**Retaliation**

Plaintiff next contends that his termination was in retaliation for his protected conduct.  Plaintiff has offered no direct evidence of retaliation. Accordingly, the court will use the *McDonnell Douglas* burden shifting analysis when reviewing this claim.  *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1178 (10th Cir. 1999); *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997).

To establish a prima facie case of retaliation, a plaintiff must prove: (1) he engaged in protected conduct; (2) he subsequently or concurrently suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.  *Stover v. Martinez,* 382 F.3d 1064, 1071 (10th Cir. 2004);  *Mattioda v. White*, 323 F.3d 1288, 1293 (10th Cir. 2003).

Plaintiff first contends that his termination was in retaliation for his having filed a grievance about his special evaluation.  Plaintiff was terminated approximately four and one-half months after having filed that grievance.

Plaintiff cannot meet his burden of establishing a prima facie case.

Although plaintiff filed a grievance with the Shawnee County Human Resources

Director prior to his termination, plaintiff never alleged or raised any issues of race

or age discrimination in the grievance.  Thus plaintiff has failed to show that in filing

this grievance, he engaged in protected conduct actionable under Title VII or the

ADEA.

        Plaintiff additionally complains that his termination was in retaliation

for his filing of an EEOC charge.  This charge did allege age and race

discrimination, as well as certain retaliation.  Although the evidence is unclear as to

the date on which plaintiff was terminated, no evidence of a causal connection has

been shown even assuming that plaintiff filed his EEOC charge the day before,

rather than the day after he was terminated.  The uncontested facts demonstrate that

plaintiff was notified of defendant's decision to terminate him before he filed his

EEOC charge, and no evidence shows the decision maker knew of plaintiff's intent

to file an EEOC charge before she decided to terminate plaintiff.   An employer

cannot engage in unlawful retaliation under Title VII if it does not know that the

employee has engaged in protected conduct.  *See Williams v. Rice*, 983 F.2d 177,

181 (10th Cir. 1993) ("plaintiff must show that the individual who took adverse

action against him knew of the employee's protected activity").  Because no causal

connection has been shown between the plaintiff's EEOC filing and his termination,

plaintiff fails to establish a prima facie case of retaliation.

IT IS THEREFORE ORDERED that defendant's motion for summary

judgment (Dk. 21) is granted.

Dated this 3rd day of January, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge